(71 Misc. Rep. 207.)

### BUSTONABY BROS. v. REVARDEL et al.

(City Court of New York, Trial Term. March, 1911.)

1. DAMAGES (§ 80*)—LIQUIDATED DAMAGES OR PENALTY—VALIDITY OF PROVISION.

A provision for $1,000 liquidated damages for breach of a contract of employment for two years at $115 a week by musicians whose services are to a degree unique and personal is reasonable, and should be upheld.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 170–175; Dec. Dig. § 80.*]

2. CONTRACTS (§ 10*)—VALIDITY—MUTUALITY.

An agreement under which musicians undertook to play at a restaurant at a certain weekly salary, and to devote their whole time exclusively to such employment for two years, and providing that their salary should stop if discharged, the proprietor being entitled to renew for an additional period without any agreement on his part to employ the musicians for any specified period beyond a single week, is unilateral and void.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

Action by Bustonaby Bros. against Victor Revardel and others. Judgment for defendants.

Greene, Hurd & Stowell, for plaintiff.
Coudert Bros., for defendants.

GREEN, J. This is an action brought by the plaintiff against the defendants to recover the sum of $1,000 as liquidated damages, and arising out of an alleged agreement of hiring between the plaintiff and defendants. The plaintiff is a domestic corporation conducting a number of high-class restaurants in New York City and elsewhere, and the defendants are musicians of conceded repute. The plaintiff claims that the defendants, or two of them, without cause, voluntarily left the employ of the plaintiff, and seeks to enforce a provision of the alleged contract, which contains a provision for the payment of $1,000 as liquidated damages in case defendants made breach thereof.

The defendants contend, firstly, that they left plaintiff's employ for the reason that they complained to the plaintiff that, although they were informed and believed from plaintiff's statements that they were hired for two years by the plaintiff, an inspection of the alleged contract showed that that fact was not sufficiently nor properly set forth therein, and that they, being ignorant of the English language, signed the paper purporting to be a contract, believing that it was a contract containing the terms and provisions upon which they had agreed; that upon

showing the contract to their friends they were made to understand that the alleged contract bound them for two years, but that the plaintiff did not undertake to hire them for any length of time, but reserved the right to discharge them at its pleasure; that upon such statement being made to the plaintiff one of the officers agreed to remedy the complaint, and, time having elapsed and failing so to do, the defendants left their position. Defendants' second contention is that the alleged contract is not a valid contract, but is a unilateral contract and consequently void for lack of mutuality.

[1] So far as the question of damages is concerned, I am satisfied that, if plaintiff is entitled to recover, the amount agreed upon is neither unfair nor unconscionable. The services to be rendered were to a degree unique and personal. The defendants were to have been employed for two years at $115 a week, covering a period of two years, and it is evident that in case of defendants' breach of the contract the damage to plaintiff would necessarily be indefinite and uncertain. The defendants were being advertised and featured by the plaintiff, and it would have been difficult to have arrived not alone at the damage, but the measure of damage as well.

[2] There remains for consideration but one contention, and that is the question as to whether the contract was a mutual, binding contract between the parties or whether the contract bound the defendants only and left the plaintiff free. The agreement is substantially as follows:

"Agreement made * * * between Bustonaby Brothers and defendants, witnesseth: First. The said parties of the second part [the defendants] have agreed and hereby do agree to enter into the service of the parties of the first part for a period of two years, beginning on the 24th day of October, 1910, with the privilege to the parties of the first part [the plaintiffs] to renew said contract for a further period of two years."

The second and third paragraphs provide for the devotion of the whole time of the defendants to the performance of their duties exclusively for the plaintiff between certain hours daily at certain places therein mentioned, and that:

"The parties of the first part agree to pay the said parties of the second part, collectively, a salary of $115 a week, except during July, August and September, when the said salary will be $105 per week, collectively."

The fourth paragraph provides:

"It is also agreed that, if for any just cause the parties of the first part are compelled to discharge either or all of the parties of the second part, then in that event the parties of the first part are to pay them for services rendered only up to the date of their discharge, and the parties of the second part agree not to hold them for any salary thereafter."

The remainder of this clause provides for the payment of liquidated damages to the amount of $1,000 by the defendants in case of their breach of the contract, and that no engagements for "outside playing" are to be undertaken except by permission of the plaintiff, and that if undertaken the plaintiff shall arrange for the same. This constitutes substantially what plaintiff claims is a mutual contract under the provisions of which plaintiff claims $1,000 damages. I confess that I

am unable to conceive of phraseology which would more completely and effectually bind the defendants and leave the plaintiff entirely free. As the court suggested at the trial when the cause was submitted without a jury, suppose the positions were reversed. Suppose the plaintiff had discharged the defendants after a week's service and defendants had brought an action for damages for breach of the contract. Where in the alleged contract is there a word to indicate a hiring at best for more than a week? And under the "fourth" paragraph of the so-called contract the defendants could be discharged at any time, and after the discharge the plaintiff could not be held for any salary thereafter. The plaintiff can obtain no comfort from the "first" paragraph of the so-called agreement. That provides that the defendants agree to enter the employ of the plaintiff for a period of two years, and is eloquent upon the term for which defendants agree to work, but the same clause in the so-called contract is strangely dumb upon plaintiff's hiring, for that period or any period of time, of the defendants in this action. The agreement in question, in my opinion, is not capable of enforcement because it is a unilateral contract having no mutuality. I can present the reasons for condemning this alleged agreement in no better language than by having recourse to the observations of the great Frenchman, Jean Jacques Rousseau, who has, in the march of time, been both acclaimed and defamed, and abhorred and adored, and who, while writing upon another subject not relevant hereto but appropriate, said:

"It is a vain and contradictory agreement to stipulate absolute authority on one side and obedience without limit on the other. Is it not clear that there is no obligation towards one from whom you have the right to demand everything? And does not this one condition, without equivalent or exchange, involve the nullity of the act? I make an agreement with you, entirely at your expense and to my profit, which I will observe as long as I please, and which you will observe as long as it pleases me." Rousseau, "The Social Contract," Putnam edition, 1906, pp. 12, 17.

The alleged contract in question is one of those under the terms of which the plaintiff could observe so long as it pleased and which the defendants had to observe only so long as it pleased the plaintiff. It were almost idle to present authorities upon the question that where a contract lacks mutuality it cannot be enforced. They are numerous. See Kohart v. Boyle, 140 App. Div. 856, 125 N. Y. Supp. 567, and cases cited. My attention has been called to cases in which the courts have spelled out a contract between the parties, but they have no application here, for in the agreement before the court my opinion is that the language is absolutely insufficient to support the finding of a mutual, binding contract between the parties. Both sides having moved for a direction of a verdict, I deny the motion made by the plaintiff and grant that of the defendants.

Judgment is therefore directed for the defendants, and let it be entered accordingly.

Judgment for defendants.